678 S.E.2d 819

**Robin R. JONES, By and Through her Guardian ad Litem, Douglas Raymond JONES, Appellant,**

v.

**ENTERPRISE LEASING COMPANY–SOUTHEAST and Enterprise Rent–A–Car Company, Respondents.**

No. 4548.

Court of Appeals of South Carolina.

Heard March 4, 2009.

Decided May 18, 2009.

Rehearing Denied June 29, 2009.

Justin S. Kahn, of Charleston, and Mark Lee Simpson, of Charlotte, for Appellant.

Samuel W. Outten, and James J. Pascoe, both of Greenville, for Respondents.

HEARN, C.J.:

Robin Jones, by and though her father and guardian ad litem (GAL), Douglas Jones, appeals the circuit court's grant of summary judgment in favor of Enterprise Rent–A–Car (ERAC). Jones asserts ERAC negligently, carelessly, and recklessly entrusted and/or supplied a vehicle to an incompetent, habitually reckless, and otherwise unfit driver. Alternatively, Jones maintains ERAC is the alter ego of its wholly owned subsidiary, Enterprise Leasing Company Southeast (Southeast), and should be secondarily and financially liable for any tort of Southeast. We affirm.

## FACTS

Southeast rented a vehicle to Jeffrey Demary for three months in 2003. On March 1, 2003, Demary was involved in an accident while driving the rented vehicle, when he struck the rear of the vehicle driven by Robin Jones. The collision caused Jones' vehicle to be pushed to the side of the road and overturned. Jones was seriously injured, causing permanent brain damage that resulted in medical bills of approximately $1,000,000, and requiring Jones to live in a nursing home.

Jones, by and through her GAL,[1] brought an action[2] in state court against ERAC and Southeast (collectively Respondents) for actual and punitive damages, alleging Respondents negligently, carelessly, and recklessly entrusted and/or supplied a vehicle to an incompetent, habitually reckless, and otherwise unfit driver. Jones also alleged ERAC was the alter ego of

---

1. Jones' original complaint was brought by and through her GAL, who was then listed as her mother, also named Robin Jones. However, at some point in the early stages of litigation Jones' GAL and accompanying caption was changed to reflect her father, Douglas Jones, as GAL.

2. Jones initially brought an action against only Southeast in federal court asserting similar allegations. The federal court action was dismissed for lack of jurisdiction.

Southeast and thus secondarily liable for any claim proven against its subsidiary. In support of the complaint, Jones contended Demary had: been convicted of at least nine speeding violations while operating a vehicle; been convicted of six speeding violations within the prior three years, three of which were for speeding greater than twelve miles over the speed limit; three speeding convictions while driving an Enterprise vehicle; his license suspended for several years for failing to pay tickets; and otherwise demonstrated a reckless driving pattern and/or habit. Thereafter, ERAC made a motion to dismiss pursuant to Rules 12(b)(2) and (6), SCRCP. Southeast additionally made a motion for a protective order against discovery requests made by Jones.

A hearing was held on ERAC's motion to dismiss, and it was denied. Subsequently, Southeast's motion for a protective order was partially granted by the circuit court. Both Southeast and ERAC made further motions for protective orders, in response to a motion by Jones to compel discovery on certain matters she had requested. ERAC additionally made a Rule 56, SCRCP motion for summary judgment, while Respondents collectively made a motion to quash a subpoena filed by Jones against Wachovia Bank. Jones, meanwhile, made an additional motion for sanctions resulting from improper deposition conduct. A hearing was held on the above motions, and the circuit court made the following rulings: Respondents' motion to quash was granted, as was the motion for a protective order regarding certain financial information; Jones' motion for sanctions was denied;[3] and Southeast's motion for a protective order was held in abeyance. Finally, the circuit court granted summary judgment to ERAC, which rendered Jones' motion to compel and ERAC's motion to protect moot. Jones filed a Rule 59(e), SCRCP motion for reconsideration of the circuit court's grant of summary judgment in favor of ERAC, which was denied. Jones appeals this determination.

---

3. Jones also filed a motion for reconsideration from the court's initial form order which denied her request for sanctions, granted Respondents' motion to quash, and granted Respondents' motion for a protective order regarding certain financial information. Jones' motion was denied.

## LAW/ANALYSIS

### I. ERAC's Primary Liability for Negligent Entrustment

Jones first maintains the circuit court erred in circumventing her remaining discovery requests by prematurely granting ERAC summary judgment. Jones contends the motions she filed to compel the discovery requests she had previously served on ERAC related directly to the issues of: whether ERAC dominates and controls Southeast; whether the knowledge and actual use by ERAC and its subsidiaries of the electronic method of checking a person's driving history prior to renting a vehicle was known and used in the industry; and whether ERAC financed the purchase of the vehicle at issue. We disagree.

Summary judgment is a drastic remedy which should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues. *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991). "This means, among other things, that summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery." *Id.* Once a Rule 56 motion has been made, the evidence and its reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* at 115, 410 S.E.2d at 545. A court must then apply the standard set out in Rule 56(c), SCRCP:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 116, 420 S.E.2d at 545–46 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Therefore, although an appellate court must view the evidence through the prism that is most favorable to Jones, her contention regarding the circuit court's grant of summary judgment before she had had a full and fair opportunity to complete discovery, may only be successful if the evidence she had presented, or the evidence she alleges would be introduced through discovery, would create a genuine issue of material fact as to ERAC's liability for each element of negligent entrustment.

■ A claim for negligent entrustment has been the subject of several cases by both this court and the supreme court; however, the elements needed to prove the claim have varied. The supreme court has held that the theory of negligent entrustment provides the owner or one in control of the vehicle and responsible for its use who is negligent in entrusting it to another can be held liable for such negligent entrustment. *Am. Mut. Fire Ins. Co. v. Passmore,* 275 S.C. 618, 621, 274 S.E.2d 416, 418 (1981) (citing 19 A.L.R.3d 1175, superseded by 91 A.L.R.5th 1). Citing *Passmore,* this court has extended the elements of negligent entrustment to include:

> (1) knowledge of or knowledge imputable to the owner that the driver was either addicted to intoxicants or had the habit of drinking, (2) that the owner knew or had imputable knowledge that the driver was likely to drive while intoxicated and (3) under these circumstances, the entrustment of a vehicle by the owner to such a driver.

*McAllister v. Graham,* 287 S.C. 455, 458, 339 S.E.2d 154, 156 (Ct.App.1986) (inserting an element of knowledge of alcohol consumption into the test for negligent entrustment).

The test administered in *McAllister* was further cited by this court in *Jackson v. Price,* 288 S.C. 377, 381–82, 342 S.E.2d 628, 631 (Ct.App.1986), and was affirmed by the supreme court in *Gadson ex rel. Gadson v. ECO Servs. of S.C., Inc.,* 374 S.C. 171, 176–77, 648 S.E.2d 585, 588 (2007) (declining to adopt sections 308 and 390 Restatement (Second) Torts (1965), instead expressly analyzing the facts of the case under the elements of negligent entrustment set forth in *Jackson*).

While case law in our state has tended towards the tort of negligent entrustment that comprises an element of drinking, sections 308 and 390 of the Restatement (Second) of Torts (1965), involve the application of negligent entrustment to situations that do not involve the presence of alcohol. Section 308 provides:

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Section 390 provides:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

In *Lydia v. Horton,* this court adopted sections 308 and 390, as the appropriate standard for negligent entrustment. 343 S.C. 376, 383–85, 540 S.E.2d 102, 106–07 (Ct.App.2000), *reversed,* 355 S.C. 36, 583 S.E.2d 750 (2003). In addition, this court sanctioned a first party cause of action for negligent entrustment against the entrustor of a vehicle or chattel; however, the supreme court granted certiorari and reversed this court, expressly declining to adopt sections 308 and 390. *Lydia v. Horton,* 355 S.C. 36, 43, 583 S.E.2d 750, 754 (2003). In *Gadson ex rel. Gadson v. ECO Services of South Carolina Incorporated,* this court again considered section 308, stating "[w]e do not find the supreme court's ruling in *Lydia* would prevent application of section 308 of the Restatement under the facts of the present case as the question addressed in *Lydia* was whether South Carolina recognizes a first party negligent entrustment claim." Op. No. 2005–UP–130, n. 4 (S.C. Ct.App. filed February 18, 2005), *reversed,* 374 S.C. 171, 648 S.E.2d 585 (2007). In reversing this court, the supreme court again declined to adopt sections 308 and 390. *Gadson,* 374 S.C. at 176–77, 648 S.E.2d at 588. In a concurring

opinion, Justice Pleicones wrote in favor of adopting sections 308 and 390 as alternative methods of proving negligent entrustment, because he found a loophole exists whereby an entrustor could avoid liability if there was no evidence the entrustor knew the entrustee was a habitual drinker or addicted to alcohol. *Id.* at 179, 648 S.E.2d at 589–90 (Pleicones, J., concurring).

Here, unlike in *Lydia* or *Gadson,* where a negligent entrustment claim could be decided under the elements established in *McAllister,* there is no suggestion that alcohol played any role in this accident. However, neither party has expressly requested this court to once again adopt sections 308 and 390, and because the only issue before us is ERAC's liability, we find it is unnecessary to adopt those sections for the purposes of this appeal, as Jones cannot prove the compulsory element of ownership or control under either rubric.

The circuit court found there was no genuine issue of material fact that ERAC owned or controlled the vehicle rented to Demary. The circuit court relied on Jones' own complaint, which stated the vehicle was titled to Southeast. "A certificate of title constitutes prima facie evidence of vehicle ownership for purposes of insurance coverage, but can be rebutted by evidence showing that someone other than the titleholder was the real owner." *Unisun Ins. Co. v. First So. Ins. Co.,* 319 S.C. 419, 423, 462 S.E.2d 260, 262 (1995). In addition, section 56–1–10(3) of the South Carolina Code (Supp. 2008) states an "[o]wner means a person, other than a lienholder, having the property or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security."

Moreover, the rental agreement was between only Southeast and Demary, and the vehicle was picked up from a Southeast location. ERAC presented affidavits indicating it exercised no control over any of its subsidiaries' use or entrustment of their vehicles, which was uncontroverted by Jones. As a result, the circuit court was correct in finding Jones failed to prove the essential element of the negligent entrustment, ownership and control, and that further discovery on the issue would be unnecessary and unavailing.

## II.  ERAC Exists As An Alter Ego of Southeast

■ Jones next contends the circuit court erred in granting summary judgment to ERAC because it so exercises dominance and control over Southeast that it is the subsidiary's alter ego.[4]  We disagree.

■ Alter ego describes a theory of procedural relief. *Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, 101 n. 1, 668 S.E.2d 798, 800 n. 1 (2008).  "[T]he alter ego doctrine is merely a means of piercing the corporate veil." *Id.* (citing 18 C.J.S. *Corporations* § 23 (2008)); *see also Mid–South Mgt. Co. Inc. v. Sherwood Dev. Corp.*, 374 S.C. 588, 603–04, 649 S.E.2d 135, 143–44 (Ct.App.2007) (affirming the alter ego theory of recovery's application to parent and subsidiary situations).  Under this theory, when a parent company controls the business decisions and actions of its subsidiary, the subsidiary becomes an instrument or alter ego of the parent. *Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, 148, 425 S.E.2d 764, 774 (Ct.App.1992).  Control required for liability under an alter ego doctrine amounts to total domination of the subsidiary to the extent the subsidiary manifested no separate corporate interests and functioned solely to achieve the purpose of the dominant corporation. *Id.* (citing *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1106 (5th Cir.1973)).  Moreover, "[c]ommon officers and/or directors and public identification of one corporation as the other's subsidiary do not, without more, support the conclusion the subsidiary is its parent's alter ego or agent for the transaction of its business." *Yarborough & Co. v. Schoolfield Furniture Indus., Inc.*, 275 S.C. 151, 153–54, 268 S.E.2d 42, 44 (1980) (citations omitted).

■ However, merely establishing the level of control or dominance a parent must have over a subsidiary, in order to prove it is the alter ego of the subservient corporation, is not

---

4. Jones also advanced at oral argument the contention that ERAC could separately be liable under a master-servant theory irrespective of an alter ego analysis; however, Jones neither plead master-servant liability, nor argued it in her brief, so we decline to address the issue. *In re Bruce O.*, 311 S.C. 514, 515 n. 1, 429 S.E.2d 858, 859 n. 1 (Ct.App. 1993) (explaining an appellant may not use oral argument as a vehicle to argue issues not argued in his brief).

sufficient to maintain an alter ago action. *Mid–South Mgt.*, 374 S.C. at 603, 649 S.E.2d at 143 (citing *Colleton County Taxpayers v. School Dist. of Colleton County*, 371 S.C. 224, 638 S.E.2d 685 (2006); *Baker v. Equitable Leasing Corp.*, 275 S.C. 359, 271 S.E.2d 596 (1980)). Instead "one must [also] show that the retention of separate corporate personalities would promote fraud, wrong or injustice, or would contravene public policy." *Mid–South Mgt.*, 374 S.C. at 603, 649 S.E.2d at 143. "Furthermore, when a motion for summary judgment is made and properly supported, an adverse party may not rest solely upon the allegations or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Colleton County Taxpayers v. School Dist. of Colleton County*, 371 S.C. 224, 237, 638 S.E.2d 685, 692 (2006) (citing Rule 56(e), SCRCP).

In addition, several factors should be considered before a parent corporation may be held liable for the torts of its subsidiaries. These include: stock ownership by parent; common officers and directors; financing of subsidiary by parent; payment of salaries and other expenses of subsidiary by parent; failure of subsidiary to maintain formalities of separate corporate existence; identity of logo; and plaintiff's knowledge of subsidiary's separate corporate existence. 16 Am.Jur. *Proof of Facts* 2d 679 (2006). The circuit court stated it considered these factors, although Jones alleges the court failed to consider them all. We agree with the circuit court, and find there to be no factual basis that ERAC exhibited control over Southeast sufficient to justify piercing the corporate veil. There is no evidence of undercapitalization, fraud in the Southeast's corporate operations or structure, or that Southeast is not financially viable on its own.

Moreover, evidence indicates ERAC executed no day-to-day control over Southeast. As the circuit court found, the boards of directors for ERAC and Southeast hold separate meetings, and Southeast pays its own employees from its own banking accounts. Finally, and most convincingly, Jones has failed to show how the retention of ERAC's and Southeast's corporate formalities would promote wrong or injustice, or would contravene public policy. As evidenced by Southeast's own responses to Jones' first discovery requests, Southeast is a self-insured entity in the amount of $15,000 per person and $30,000

per accident for bodily injury, but maintains excess insurance with various companies totaling $245 million.[5] Given this information, we find Southeast to be adequately prepared and funded in the event of a verdict against it; therefore, in the absence of any clear dominance or control, no wrong, injustice or contravention of public policy would occur in failing to find ERAC the alter ego of Southeast.

## CONCLUSION[6]

Based on the foregoing, the circuit court neither erred in granting summary judgment to ERAC for primary liability on Jones' claim for negligent entrustment, nor in finding ERAC is not the alter ego of Southeast.[7] Accordingly, the decision of the circuit court is

**AFFIRMED.**

PIEPER, J., and LOCKEMY, J., concur.

---

**5.** We note that generally, evidence as to whether a person was or was not insured against liability is not admissible upon the issue of the person's alleged negligence; however, this general rule does not require the exclusion of evidence of insurance when offered for another purpose such as proof of ownership or control. Rule 411, SCRE. We find Southeast's maintenance of excess insurance speaks directly to its independence and viability as a separate corporation.

**6.** Jones additionally appears to assert the circuit court's grant of summary judgment erroneously overruled the prior circuit court ruling, by a different judge, which denied ERAC's Rule 12(b)(6), SCRCP motion. Jones maintains the prior 12(b)(6) motion was converted into a motion for summary judgment because matters outside of the pleadings were considered; therefore, the subsequent grant of summary judgment, which is the subject of this appeal, reversed the ruling of another circuit court judge. Although Jones made this argument to the circuit court in her Rule 59(e) motion for reconsideration, she did not make this argument in her initial brief to this court, instead reviving this argument in her reply brief. As a result, this issue is not preserved for our review, because no new issues may be raised to this court by the appellant in the reply brief. *See Hunter v. Staples*, 335 S.C. 93, 103, 515 S.E.2d 261, 267 (Ct.App.1999) (finding appellant was precluded from asserting an argument for the first time in its reply brief); *Fields v. Melrose Ltd. P'ship*, 312 S.C. 102, 106, 439 S.E.2d 283, 285 (Ct.App. 1993) (acknowledging an appellant may not use the reply brief to argue issues not argued in its brief in chief).

**7.** ERAC also asserts two additional sustaining grounds, including: (1) whether a defendant may be liable for negligent entrustment when the

---

plaintiff does not allege knowledge by the defendant that the driver was addicted to intoxicants or had the habit of drinking; and (2) whether South Carolina imposes a duty on a rental car company to investigate the driving history of a customer who presents a valid driver's license. In light of our disposition above, we decline to address these additional contentions. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).